## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before any
court except for the purpose of establishing
the defense of res judicata, collateral
estoppel, or the law of the case.



FILED

09/06/2017, 10:29 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Andrea L. Ciobanu
Ciobanu Law, P.C.
Indianapolis, IN

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Victoria Mellado, <br> *Appellant-Petitioner,* <br><br> v. <br><br> Zachary Holt, <br> *Appellee-Respondent* | September 6, 2017 <br><br> Court of Appeals Case No. <br> 31A01-1705-DR-1000 <br><br> Appeal from the Harrison Circuit Court <br><br> The Honorable Curtis Eskew, Special Judge <br><br> Trial Court Cause No. <br> 31C01-1211-DR-000269 |

**Vaidik, Chief Judge.**

# Case Summary

[1]     Victoria Mellado ("Mother") filed a petition to modify custody of her daughter.

The trial court found that there had not been a substantial change in

circumstances and left primary physical custody with Zachary Holt ("Father"). Finding no error, we affirm.

# Facts and Procedural History

Mother and Father were divorced in Harrison Circuit Court in August 2013. They have one child, I.H. ("Child"), who was born in 2009.[1] The parties reached an agreement on child custody and parenting time. The parties agreed to joint legal custody. Due to Mother's employment with the United States Navy in Virginia, they agreed that Father would have primary physical custody and that Mother would have parenting time with Child as follows: (1) from May 29 to July 30 every year; (2) from December 15 to January 5 every year; and (3) whenever Mother received military leave. The parties also agreed that if Mother was discharged from the military, it amounted to a substantial change in circumstances that warranted a modification of their agreement.

Child attended school in Corydon in Harrison County for her kindergarten year. She lived with Father but spent a lot of time with Mother's mother, Bonnie. For instance, Child got on and off the bus at Bonnie's house. Mother and Father reached an informal agreement, and Child moved to Virginia to be with Mother for her first-grade year. Child returned to live with Father in Corydon for her second-grade year (2016-17).

---

[1] Mother has another child (born in 2013) from a subsequent relationship who lives with her.

[4] In February 2017, Mother, who was still in the Navy in Virginia, filed a "Petition to Modify Parenting Time." She alleged that there had been a substantial change in circumstances and that it was in the best interests of Child for Mother to have primary physical custody and for Father to have parenting time according to the Parenting Time Guidelines when distance is a factor.

[5] A hearing was held in April 2017. Child was near the end of second grade at the time. Mother testified that Father had moved three times in the past four months alone. She acknowledged that Father had recently purchased a home. She pointed out that it was in a different town and that Child might have to change schools for the 2017-18 school year, although Father had not discussed it with her yet. She also testified about Father's fiancée, Amanda, who Father had started dating that past fall. In short, Mother disapproved of Amanda: she thought that Father moved in with Amanda too soon, did not like that Amanda exposed Child to church, did not like that Child's bedtime was 9 p.m., and did not like the fact that Amanda has a criminal record. Amanda's criminal history includes operating while intoxicated and driving while suspended; Amanda was on probation at the time of the hearing. Tr. p. 54. Mother explained that although she was raised Catholic, says prayers with Child, and put Bible verses on Child's bedroom wall at her house, she believes that attending church is a decision that Child should make on her own when she is older. Mother complained that when she received Child for Christmas break, Child was "infested" with lice, although Father told her that the lice was "gone." *Id.* at 15. Mother was also concerned about Child's grades, because Child had

recently received a C. Finally, Mother testified that she would be on active duty in the Navy until 2023 and that it would be "very likely" that she would be stationed in Virginia Beach or Washington State. *Id.* at 36.

[6] Bonnie testified that ever since Father moved in with Amanda, she had not seen Child as much as she did when Child was in kindergarten and that if primary physical custody remained with Father, she did not feel that she would "be able to see [Child] a lot." *Id.* at 62.

[7] Child's second-grade teacher testified that Child was an "A, B student." *Id.* at 44. She said that Child did have one "C+" in math the last grading period, but she attributed Child's lower grade to a shift in taking tests from paper and pencil to computer. *Id.* at 45. In addition, the teacher explained that at the beginning of the year, Child's reading level was "on level" but now it was "above level," which demonstrated "significant[]" progress. *Id.* The teacher said Child was a "solid" student who worked well with others and did not have any behavioral issues. *Id.* at 47.

[8] Father testified that he and Amanda, who were getting married the following month, recently purchased a home in nearby Lanesville. He said that he would like Child to attend school in Lanesville, which had better schools than Corydon, but that a "decision hasn't been made at this point." *Id.* at 67; *see also id.* at 77 (Father testifying that it was "important" that he talk to Mother about

Child switching schools but that he had not discussed it with her "yet").[2] Father explained that Child got lice either at school or the after-school program that she attended and that he and Amanda were treating it at the time. He also said that he told Mother about the lice before Child went to Virginia for Christmas break. Moreover, Father said that this was the only time that Child had ever contracted lice. As far as Bonnie's concerns, Father testified that he was not trying to keep Child from Bonnie. He said that when Bonnie asked, he did his best, based on his schedule with Amanda and her children, to take Child to her house and that he was "more than happy" to do so. *Id.* at 76.

[9] At the end of the hearing, the judge said:

> Alright. Court being duly advised then will deny the petition to modify and custody will remain with the Father. That's not to say that you aren't an excellent Mother and part of the conditions of him maintaining primary custody will be, that [Mother] has a good relationship with her daughter and that her mother, the child's grandmother, also visits and whatever. [Father's] new wife to be has obviously had some trouble, but it sounds like it's nothing that can't be coped with. However, if things don't go as her probation and all demands, that would be a new circumstance. But the say from the school teacher's point of view, everything is going well and there's been no other proof of change of circumstance to justify modification.

---

[2] The trial-court docket indicates that on June 9, 2017, Father filed a notice of intent to move to the Lanesville address and that Child would be attending school in Lanesville. Mother did not file a motion to prevent relocation of Child, which must be filed within sixty days pursuant to Indiana Code section 31-17-2.2-5.

*Id.* at 78. The trial court then issued an order finding that modification of physical custody was not in the best interests of Child and that there had not been a substantial change in the factors that the court can consider. Appellant's App. Vol. II p. 74. The court reaffirmed the parties' August 2013 agreement regarding child custody and parenting time.

[10] Mother now appeals.

# Discussion and Decision

[11] Father has not filed an appellee's brief. In such cases, we will not develop an argument for the appellee, and we apply a less stringent standard of review. *Wharton v. State*, 42 N.E.3d 539, 541 (Ind. Ct. App. 2015). "We may reverse if the appellant is able to establish prima facie error, which is error at first sight, on first appearance, or on the face of it." *Id.* However, the appellee's failure to provide argument does not relieve us of our obligation to correctly apply the law to the facts in the record in order to determine whether reversal is required. *Id.*

[12] Mother contends that the trial court erred in denying her petition to modify custody. We review custody modifications for abuse of discretion, with a preference for granting latitude and deference to our trial judges in family-law matters. *Kirk v. Kirk*, 770 N.E.2d 304, 307 (Ind. 2002). Accordingly, in order to reverse a trial court's ruling, it is not enough that the evidence might have supported a different conclusion; instead, it must "positively require the

conclusion contended for by the appellant before there is a basis for reversal." *Id.* We may not reweigh the evidence or reassess witness credibility, and we must view the evidence in a light most favorable to the judgment. *Montgomery v. Montgomery*, 59 N.E.3d 343, 350 (Ind. Ct. App. 2016), *trans. denied*.

[13] A trial court may not modify custody unless (1) "modification is in the best interests of the child" and (2) "there is a substantial change in one (1) or more of the factors that the court may consider" in its initial custody determination. Ind. Code § 31-17-2-21. These factors include: (1) the age and sex of the child; (2) the wishes of the child's parents; (3) the wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen years of age; (4) the interaction and interrelationship of the child with the child's parents, siblings, and any other person who may significantly affect the child's best interest; (5) the child's adjustment to home, school, and community; and (6) the mental and physical health of all individuals involved. Ind. Code § 31-17-2-8.

[14] Mother argues that the trial court "ignored" several of the factors in Section 31-17-2-8 when it found that there had not been a substantial change. Appellant's Br. p. 18. She said this is evident because the trial court mentioned only a couple of the factors at the end of the hearing and none of them in its order.[3] She specifically asserts that the court did not consider the wishes of the parents;

---

[3] Mother concedes that the trial court was not required to make such findings. *See* Appellant's Br. p. 14.

the interactions and relationships of Child; Child's adjustment to home, school, and community; and the physical health of Child. *See id.* at 12. We disagree. The trial court did not ignore any of the factors; rather, it considered these factors but found that there had not been a substantial change in any of them that warranted a modification.

[15] The record shows that at the end of the hearing, the trial court discussed a few of these factors. First, the trial court discussed the interactions and interrelationships of Child. The court said that in order for Father to maintain primary physical custody of Child, it was critical for Mother, who the court called an "excellent Mother," to maintain a good relationship with Child and for Bonnie to visit Child. The trial court also discussed Amanda's legal troubles. The court indicated that if she did not successfully complete probation, that could be a basis for Mother to file a petition to modify custody. Finally, the trial court said that although Mother was concerned about Child's schooling, her teacher said that everything was "going well." As for the other concerns that Mother brought up during the hearing, the court said "there's been **no other proof of change of circumstance** to justify modification." Tr. p. 78 (emphasis added); *see also* Appellant's App. Vol. II p. 74 ("[T]here has not been a substantial change in the factors the Court can consider when modifying custody."). Thus, contrary to Mother's claim that the court ignored these

factors, we find that the court considered the factors but did not find a substantial change in any of them.[4]

[16]     Moreover, we find that the trial court did not err in finding that Mother failed to prove that there has been a substantial change in any of them. Although Mother claims that Father presented no evidence of what his wishes were, it is clear that he wanted to maintain primary physical custody of Child. For example, he testified that he was not happy the year that he agreed to let Child live with Mother in Virginia; however, he felt that it was a "good time" for Child to get to know her Mother since she was in the military. Tr. p. 66. The evidence also shows that Child had good relationships with both of her parents and that Father was doing his best to let Bonnie see Child given that he was in the process of establishing a new family with Amanda and her children. As for Amanda, the trial court did not see that her criminal history posed any problems so long as she successfully completed her probation. As for Child's school performance, her teacher said she was doing well. Although she had received one C+, the teacher explained why she thought that was so. Father admitted that he had moved around a lot recently but said that he and Amanda had just purchased a home in Lanesville, which had better schools than Corydon, and that the plan was for Child to go to school in Lanesville for the 2017-18 school year. Finally, although Mother was upset that Child had lice

---

[4] For this reason, the case that Mother relies on, *Green v. Green*, 843 N.E.2d 23 (Ind. Ct. App. 2006), is distinguishable.

over Christmas break, there is evidence that this was a one-time occurrence and that Child contracted it either at school or the after-school program that she attended. Accordingly, the trial court did not err when it denied Mother's petition to modify custody.[5]

Affirmed.

Mathias, J., and Crone, J., concur.

---

[5] Mother also requested a change in legal custody and contends that the trial court erred in denying that request. We do not reach this issue. Because we affirm the trial court's decision to leave primary physical custody of Child with Father, it would be inappropriate to award Mother, who lives in Virginia, sole legal custody of Child. Notably, Mother cites no case law approving of such an arrangement.